UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NICOLE AND MATTHEW NEVILLE,

        Plaintiffs,

v.                              Case No. 13-C-700

ARIENS COMPANY and ARIENS COMPANY
WELFARE BENEFIT PLAN,

        Defendants.

**DECISION AND ORDER**

       Plaintiffs brought this Americans With Disabilities Act and ERISA action against Nicole Neville's employer and its welfare benefit plan. The complaint also includes a claim for promissory estoppel over which the court has supplemental jurisdiction. 28 U.S.C. § 1367. In their complaint they assert that the Ariens Company hired Nicole in July 2011 after promising her a long and steady employment relationship. Only a month later, however, she was fired without any convincing explanation. Plaintiffs assert that the cause of the firing was the fact that Matthew Neville, Nicole's husband, suffered from leukemia and would therefore be very expensive to insure.

       The Defendants have filed a motion to dismiss Plaintiffs' claim for promissory estoppel and their ERISA retaliation claim against the Ariens Company Welfare Benefit Plan. Subsequently, Plaintiffs moved to amend their complaint to add a claim for breach of fiduciary duty, which the Defendants oppose on the ground that the amendment would be futile, i.e., that it would not withstand a motion to dismiss. Accordingly, there are in essence two motions to dismiss presently before me. For the reasons given below, the motion to dismiss will be granted and the motion to

amend will be denied.

**I. Partial Motion to Dismiss**

The complaint brings three claims. First, it alleges unlawful employment discrimination under the Americans With Disabilities Act, 42 U.S.C. § 12101, due to Ariens' alleged discrimination against her on account of her husband's disability. The Defendants do not move to dismiss this claim. The complaint also alleges a claim against Ariens for promissory estoppel, on the theory that Nicole Neville relied on Ariens' promise of employment and gave up job opportunities elsewhere. Finally, the complaint alleges retaliation against both Defendants for their alleged interference with her right to coverage under the company's benefits plan.

Consideration of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) requires the court to assume that the factual allegations are true and to evaluate whether those allegations state a claim upon which relief may be granted.

**A. Promissory Estoppel**

The Defendants move to dismiss the estoppel claim (which arises under state law) on the basis that it runs in direct contrast to Wisconsin's long tradition of at-will employment. *See Hausman v. St. Croix Care Ctr.*, 214 Wis.2d 655, 663, 571 N.W.2d 393 (1997) ("The employment-at-will doctrine is an established general tenet of workplace relations in this jurisdiction."). They argue, in essence, that if a court were to accept an estoppel claim under these circumstances, estoppel could effectively undermine the state's at-will employment regime because coveted prospective employees are almost always given a rosy picture of their future employment. In wooing a potential employee, the employer will almost always convey the impression that the workplace is friendly and stable, and that turnover is low or nonexistent. If an employee's reliance

2

on such commonplace promises sufficed to give rise to an estoppel claim, the term "at-will" would lose most of its meaning.

The Defendants cite *Forrer v. Sears, Roebuck & Co.* for the proposition that promissory estoppel cannot supplant the at-will employment relationship. 36 Wis. 2d 388, 390 153 N.W.2d 587, 588 (Wis. 1967). There, the facts were these:

> During December of 1964 the general manager of the Madison [Sears] store promised him 'permanent employment' as manager of the hardware division of the Madison store in consideration of giving up his farming operations and working full time for the defendant. It is alleged that thereupon the plaintiff sold his stock of hogs and cattle and rented the barn to a neighbor-all at a loss, placed his acreage in the United States Department of Agriculture feed-grain program, and on February 1, 1965, commenced working full time for the defendant. He alleges that thereafter, despite the understanding with Sears, he was discharged without cause on June 1, 1965.

*Id.*

The Wisconsin Supreme Court held that under those circumstances a promissory estoppel claim would undoubtedly exist, but it found that Sears had in fact lived up to its promise of "permanent employment," despite the fact that the plaintiff was discharged less than a year later. *Id.* at 393, 589. The court was able to reach that conclusion because, in Wisconsin, an offer of "permanent employment" does not mean an employee is guaranteed a job as long as he wants it—it simply means an employment relationship that is terminable at will. *Id.* "We thus conclude that the most that was promised by Sears was employment terminable at will. This promise was carried out when the plaintiff was hired as the defendant's full-time manager. The defendant's obligation was discharged when its promise was kept, and, hence, the doctrine of promissory estoppel is not applicable." *Id.* at 394, 590. Based on *Forrer* and similar cases, Ariens argues that at most it offered the Plaintiff an at-will employment relationship, and it lived up to its end of the bargain

3

when it hired her. The fact that it terminated her employment soon after does not mean it reneged on its promise.

Plaintiffs argue, however, that *Forrer* does not mandate that employment relationships are *always* on an at-will basis. That court noted simply that there is "a strong presumption in favor of a contract terminable at will unless the terms of the contract or other circumstances clearly manifest the parties' intent to bind each other." *Id.* at 393, 589-90. Here, Plaintiffs argue that the facts alleged in the complaint, when read in the light most favorable to them, suggest that the circumstances *did* clearly manifest the parties' intent to bind each other. This was not a casual, run-of-the-mill employment offer but an explicit solicitation of Nicole Neville by Ariens. After it learned she had already accepted a position elsewhere, it created a new position for her with a higher salary in order to convince her to accept it. During her interview, the company said she would have a bright future at the company and that employment at Ariens was usually a long-term relationship. Employees were not terminated "except in the case of extreme and long-term performance issues," and Nicole Neville would have many opportunities to prove her value to the company in the years to come. (ECF No. 1, ¶ 9.)

Plaintiffs are correct that *Forrer* leaves an opening for parties to enter into permanent employment relationships, but I am not satisfied that the complaint meets that high hurdle here. At best (and it must be read in the light most favorable to the Nevilles), the complaint states that Ariens gave Nicole Neville a hard sell and encouraged her to accept an offer because, *in general*, employment at Ariens is a long-term relationship. The complaint does not allege that Ariens promised that she, in particular, would be guaranteed long-term employment. In fact, the complaint does not even allege that *any* employees at Ariens are actually promised "permanent" employment

4

(in the colloquial sense)—it merely says the company, as a matter of *practice* rather than a matter of promise, does not generally fire people without good cause. Thus, although it is true that in some cases an estoppel claim might be viable, here the complaint's allegations do not give rise to that kind of promise because the promises were too vague and general to constitute anything more than a typical at-will relationship. As in *Forrer,* the company did live up to the promises it made by employing Nicole Neville on a "permanent" basis.

**B. ERISA Retaliation Claim**

Plaintiffs also brought an ERISA retaliation claim against both Defendants. Under § 510 of ERISA, it "shall be unlawful for any person to discharge, fine, suspend . . . . a participant . . . for exercising any right to which he is entitled . . . under the plan." 29 U.S.C. § 1140. The Defendants argue that the benefits plan is not a "person" who may be sued for retaliation and seek to dismiss the claim against the plan on that basis.

The Plaintiffs essentially concede the point. They argue, however, that their complaint should be read more broadly to include claims for breach of fiduciary duty under § 1132(a)(2). In fact, they have filed a motion to amend the complaint to make the fiduciary claim more explicit and to eliminate the benefits claim. Thus, I will address the merits of the proposed amended claim below and will grant the Defendants' motion to dismiss the retaliation claim against the plan.

**II. Motion to Amend**

As just noted, the motion to amend seeks to add a breach of fiduciary claim against both the company and the plan—a claim that was not part of the original complaint. The Defendants oppose the motion on the grounds of futility. In essence, they argue, when the company terminated Nicole Neville's employment, neither the company nor the plan were acting in a fiduciary capacity.

5

The Seventh Circuit has recently confirmed that "[a]n employer does not act as an ERISA fiduciary when it decides to terminate an employment relationship." *Brooks v. Pactiv Corp.,* 729 F.3d 758, 766 (7th Cir. 2013). Plaintiffs concede that the plan was not acting as a fiduciary when it terminated Nicole Neville (assuming a benefits plan could even do such a thing), but they argue that the plan provided cost information to the company so that the company would terminate Nicole's employment. In doing so, the plan was acting as a fiduciary because it was exercising its discretion over management of the plan and its assets. 29 U.S.C. § 1002(21)(A).

The statute says that "[a] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan . . ." 29 U.S.C. § 1002(21)(A). According to the proposed amended complaint, the allegation here is that agents of the plan "communicated with agents of the Company regarding the extent and expense of Mr. Neville's illness, and suggested, endorsed and / or agreed with the idea to terminate Mrs. Neville's employment for the purpose of avoiding expense to the Company and the Plan." (ECF No. 15-2 at ¶ 13.) Simply telling the company what it would cost to provide treatment for an employee is not a fiduciary act, not least because it is not an exercise of discretionary authority or control. 29 U.S.C. § 1002(21)(A). It is simply a matter of fact. And to the extent the plan suggested or "endorsed" the idea of terminating Nicole Neville's employment, the courts have already held that terminating employees is not a fiduciary act either. "[W]hen Pactiv fired Brooks, the company wore its 'employer' hat, not its 'plan administrator' hat. The decision did not involve the administration or management of the Plan, the management or disposition of the Plan's assets, the dispensation of investment advice, or a benefits determination." *Brooks,* 729 F.3d at 766. The same is true here. Obviously, the termination of an employee will have a collateral effect on the

6

plan's finances, but that does not bring a termination into the fiduciary realm.

Plaintiffs argue that the plan was in fact acting in a fiduciary capacity because the ERISA benefits are what drove the employment termination decision rather than any actual business or employment concerns. In other words, although the decision was styled as a termination of employment, functionally it was really a termination of benefits decision. But "it is the nature of the acts taken by an employer--not the intent behind them--that determines in what capacity the employer acted." *Bodine v. Employers Cas. Co.,* 352 F.3d 245, 252 (5th Cir. 2003) (citing *Long v. Excel Telecomm. Corp.,* 1999 WL 1029088 at *2 (N.D.Tex. Nov.9, 1999)). The fact that the employer or plan might have had some benefits-related intent does not change the fact that the termination of employment is not a fiduciary decision. In fact, the Seventh Circuit in *Brooks* rejected a similar argument:

> Brooks insists that the district court misconstrued his claim, which he characterizes as a challenge to the cancellation of his health and dental insurance, not a challenge to Pactiv's decision to terminate his employment. That line is too fine. The cancellation of Brooks's health and dental coverage followed as a direct consequence of the termination of his employment and cannot be separated from the termination itself.

729 F.3d at 766.

The same holds true here. The act at issue—termination—is an employment action, not a fiduciary one, and that is true regardless of which party is performing the action. Even if the termination of benefits is a direct and even intentional result of the termination, it "cannot be separated from the termination itself," which is not a fiduciary action. *Id.* Accordingly, I conclude that the proposed amendment would be futile and will deny the motion to amend.

7

**III. Conclusion**

For the reasons given above, the partial motion to dismiss is **GRANTED**, and the promissory estoppel claim is **DISMISSED**. The retaliation claim against the plan is **DISMISSED**. The motion to amend is **DENIED**.

**SO ORDERED** this 19th day of December, 2013.

                                                s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court